UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
JESSICA NICOLE REID,  :
 :
            Plaintiff,  :    22-CV-10708 (JGLC) (OTW)
 :
         -against-  :    **REPORT & RECOMMENDATION TO**
 :    **THE HONORABLE JESSICA G.L.**
LEONARD LARRY MCKELVEY, et al.,  :    **CLARKE**
 :
            Defendants.  :
 :
 :
------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

**I.    INTRODUCTION**

Plaintiff Jessica Nicole Reid brings this case against Defendants Leonard Larry McKelvey p/k/a Charlamagne Tha God and Iheartmedia, Inc. (collectively, the "Media Defendants"), as well as Defendant Simon & Schuster ("S&S") for claims arising out of an alleged sexual assault that took place in 2001. The Media Defendants and Defendant S&S have filed separate motions to dismiss the First Amended Complaint (ECF 62). (ECF Nos. 65, 66, 84, 85, 86). This Report and Recommendation addresses the motion to dismiss filed by Defendant S&S at ECF Nos. 84, 85, and 86. For the reasons below, I respectfully recommend that Defendant S&S's motion be **GRANTED**.

II.     **BACKGROUND**[1]

  A. **Factual Background**

In 2001, Reid was sexually assaulted by McKelvey at a party in South Carolina.[2]

McKelvey discussed the assault in his book, *Black Privilege*, published by Simon & Shuster and Black Privilege Publishing on April 17, 2017. (ECF 62 at ¶ 61) (ECF 86 at 3).[3] The relevant passages are on pages 82-85. (ECF 62 at ¶ 61) (ECF 85-1). McKelvey gives the following account of the alleged assault, in which Reid is not mentioned by name:

> The night started off great – lots of drinking, smoking, dancing, and bullshitting. But at some point one of the girls passed out and when she woke up later that night, she claimed that some of the dudes at the party had sexually assaulted her. I wasn't there at the time – I'd left to go get some weed – and when I finally heard about what had happened, the entire party had cleared out. Apparently she'd gone into a dark room with some guys to have sex and when she'd started to protest, one of them said, "Relax, it's Charlamagne."

(ECF 85-1 at 6). McKelvey goes on to say that, after he learned that his friend was in jail for the alleged assault, he went to the police and took responsibility for the party. (ECF 85-1 at 7). McKelvey then relates that he was arrested "in connection to the assault," that the police "took a couple of blood and hair samples but released [him] the same day," and that "[e]ventually the criminal sexual charges were dropped, but [he] was hit with a charge of contributing to the delinquency of a minor because [he'd] brought alcohol to the party." (ECF 85-1 at 7).

---

[1] For the purpose of deciding a motion to dismiss, the Court accepts the amended complaint's factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[2] Reid's allegations against the Media Defendants are detailed in her Amended Complaint and will be addressed in full when the Court addresses the Media Defendants' motion to dismiss at ECF Nos. 65 and 66.
[3] Black Privilege Publishing is an imprint of S&S, not a separate legal entity capable of being sued. (ECF 86 at 1 n.1).

Since the assault, Reid has been suicidal, prescribed antidepressants, and underwent counseling in 2015 and 2017. (ECF 62 at ¶ 67). She suffers from extreme post-traumatic stress disorder and "still has dreams and flashbacks of the incident to this day." (ECF 62 at ¶ 68). Reid also suffers from intimacy issues "stem[ming] from fear, and she subconsciously associates physical intimacy and touch with pain and danger," and "often tenses up during sex and experience[s] a lot of cramping and burning during intimacy." (ECF 62 at ¶ 69). Reid "has a huge fear of being around men, especially in an intimate setting." (ECF 62 at ¶ 69). McKelvey's large media presence as a TV and radio personality "adds to her emotional distress as Ms. Reid cannot seem to be able to escape from Charlamagne." (ECF 62 at ¶ 70).

### B. Procedural Background

Plaintiff filed this lawsuit *pro se* on December 19, 2022. (ECF 1). On February 15, 2023, this case was referred for general pretrial and all dispositive motions. (ECF 8). After she obtained counsel, Reid filed an amended complaint with leave of the Court on September 8, 2023, adding S&S as a Defendant and pleading claims against them for defamation and intentional infliction of emotional distress. (ECF 62). The Media Defendants filed their motion to dismiss on October 6, 2023. (ECF 65). Defendant S&S filed its motion to dismiss on January 29, 2024, after obtaining an extension of the filing deadline from the Court with the consent of Plaintiff (ECF 82). (ECF Nos. 84, 85, and 86). As of this writing, Plaintiff has not filed a response to Defendant S&S's motion to dismiss. Accordingly, the Court construes Defendant S&S's motion as unopposed. For the reasons below, Defendant S&S's motion to dismiss should be **GRANTED**.

### III.     ANALYSIS

#### A.  Child Victims Act

Plaintiff's claims against Defendant S&S fail on several procedural grounds. First, Plaintiff relies on the Child Victims Act (the "CVA"), N.Y. C.P.L.R. §§ 208(b), 214-g, to revive her defamation claims which would otherwise be untimely. The CVA extends the statute of limitations for "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense [against a child]" under New York law which would otherwise be barred by the relevant statute of limitations. N.Y. C.P.L.R. § 214-g. The revival period runs from the effective date of the law, February 14, 2019, to August 14, 2021. *Caldwell v. City of New York*, No. 21-CV-6560 (DEH), 2024 WL 774967 (S.D.N.Y. Feb. 26, 2024), *reconsideration denied*, No. 21-CV-6560 (DEH), 2024 WL 1586695 (S.D.N.Y. Apr. 11, 2024) (citing N.Y. C.P.L.R. § 214-g; 2020 N.Y. Laws ch. 130, § 1); *accord Samuel W. v. United Synagogue of Conservative Judaism*, 194 N.Y.S.3d 25, 26 (1st Dep't 2023) ("[Section 214-g revived claims] for a two-year period which ended on August 14, 2021.").

First, the CVA does not apply to Plaintiff's defamation and intentional infliction of emotional distress claims against Defendant S&S because defamation and IIED arising out of the publication of a book do not constitute a sexual offense under New York criminal law. *Holloway v. Holy See*, 537 F. Supp. 3d 502, 505 n.2 (S.D.N.Y. 2021) ("Claims arising pursuant to the CVA must be tied to an alleged violation of New York criminal law."); *accord Samuel W.*, 194 N.Y.S.3d at 25.

Second, even if the CVA did revive time-barred defamation and IIED claims that arise out of an alleged sexual assault, Plaintiff's claims were not timely. Courts have uniformly found that the two-year revival period for claims brought under the CVA ended on August 14, 2021. Plaintiff filed her complaint on December 19, 2022, more than a year following the end of the revival period.

### B. Defamation

Plaintiff's defamation claims against Defendant S&S also fail on the merits.

"Under New York law, a complaint asserting defamation must plausibly allege five elements: '(1) a writen defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability.'" *Cassava Scis., Inc. v. Heilbut*, No. 22-CV-9409 (GHW) (OTW), 2024 WL 553806, at *5 (S.D.N.Y. Jan. 5, 2024), *report and recommendation adopted sub nom. Cassava Scis., Inc. v. Bredt*, No. 1:22-CV-9409-GHW, 2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024) (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)). For defamation claims brought by *public* figures, a plaintiff must show a defendant acted with "actual malice." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–280 (1964). For defamation claims brought by *private* figures, a plaintiff must show only that a defendant acted negligently. *Rodriguez v. Daily News, L.P.*, 37 N.Y.S. 3d 613, 614 (2nd Dep't 2016). "Whether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance." *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (quoting *Aronson v. Wiersma*, 65 N.Y.2d 592 (1985)) (internal quotation marks omitted).

Plaintiff fails to plausibly allege the first and third elements of defamation against Defendant S&S. As to the first element, nothing in the passage highlighted by Plaintiff in her Amended Complaint is defamatory in nature or susceptible to a defamatory connotation. The book states that Plaintiff "passed out and when she woke up later that night, she claimed that some of the dudes at the party had sexually assaulted her" and "one of them said, 'Relax, it's Charlamagne.'" Nothing in the highlighted passage, or anything else in the larger excerpt from the book provided by Defendant, expressly or implicitly accuses Plaintiff consenting to having sex with anyone at the party, or of lying about the assault. In fact, McKelvey's recounting of the assault and its aftermath is entirely compatible with Plaintiff's account of the assault except for Plaintiff's allegation that she was able to see McKelvey's face prior to his sexually assaulting her. (ECF 62 at ¶ 32). In any event, McKelvey's account, although self-serving in its version of events, does not "expose[]" Plaintiff "to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace." *Celle*, 209 F.3d at 177 (alteration and quotation marks omitted).

As to the third element, Plaintiff does not sufficiently allege that Defendant S&S acted with actual malice, or with negligence, in publishing McKelvey's account.

### C. Intentional Infliction of Emotional Distress

Finally, Plaintiff's intentional infliction of emotional distress ("IIED") claims also fail on the merits.

"Under New York law, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."

6

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) (citing *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)). "The bar for pleading this claim is 'extremely high' and the conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *McCollum v. Baldwin*, 688 F. Supp. 3d 117, 132 (S.D.N.Y. 2023) (quoting *Sesto v. Slaine*, 171 F. Supp. 3d. 194, 201-02 (S.D.N.Y. 2016)).

Plaintiff has failed to allege that Defendant either exhibited any form of extreme and outrageous conduct, or intended to cause Plaintiff severe emotional distress.

### IV.    CONCLUSION

For the foregoing reasons, I recommend that Defendant S&S's motion to dismiss (ECF 84) be **GRANTED**, and Plaintiff's claims against Defendant S&S be **DISMISSED** in their entirety. I further recommend that leave to amend not be granted as it would be futile.

### V.    OBJECTIONS

In accordance with 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* FED. R. CIV. P. 6. A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable Jessica G. L. Clarke, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Clarke.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v.*

*Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983).

Respectfully submitted,

Dated: August 14, 2024            _s/ Ona T. Wang_
      New York, New York         **Ona T. Wang**
                                            United States Magistrate Judge